## Lacey v. Layne, et al.

(Decided January 28, 1921.)

## Appeal from Todd Circuit Court.

1. Husband and Wife—Expression of Purpose to Convey—Trust Relation.—The expression of a purpose by a wife to convey at some time in the future land to her husband, is evidence of no purpose upon her part to create any trust relation, or any purpose to hold the land as security for a debt, and carries with it no legal or moral obligation.

2. Contracts—Cancellation.—The cancellation of an executed contract by a court of equity is the exercise of an extraordinary power and should not be resorted to except in a clear case.

3. Trusts—Parol Evidence.—Parol evidence of the existence of a trust in land is required to be clear, convincing and most satisfactory, and particularly will it be closely scrutinized after the death of one or more of the interested parties.

4. Trusts—Constructive Trust—Evidence.—Evidence examined and held to be insufficient to establish a constructive trust, or that the decedent held the title as security for money.

5. Deeds—Alteration—Title.—Where a deed is executed and delivered to one and is accepted by him, and he pays the cash consideration therefor and executes his notes for the deferred payments, but thereafter causes the said deed to be so altered that another is made to appear to be the grantee, and there is no re-execution or re-acknowledgment of the deed thereafter, the first grantee is not divested of title.

6. Estoppel.—Estoppel must be pleaded.

JAMES R. MALLORY for appellant.

SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming in part and reversing in part.

In 1899 the appellant, E. W. Lacy, married Miss Fennie Layne. At the time they each had some personal

property of small value, but in 1902 she inherited fifteen acres of land which they thereafter occupied as a home.

Adjoining the fifteen acre tract was a tract of 137 acres owned jointly by Stuart and Yancey, Stuart a one-third undivided interest and Yancey two-thirds.

In March, 1902, the wife had in addition about six hundred dollars which she had inherited, and at that time appellant contracted with Stuart, and Stuart and wife conveyed to him their undivided one-third interest in the 137 acre tract for the consideration of one thousand dollars, appellant using his wife's money in the payment of the cash consideration of seven hundred dollars, and executing his notes to Stuart for the deferred payments. Stuart and wife executed the conveyance, and delivered to Lacy a conveyance therefor which he accepted; but when Lacy took the deed home and told his wife of the transaction, they concluded that the deed should have been made to her, and thereafter Lacy took the deed, before it was recorded, back to Stuart, and Stuart erased therefrom the initials "E. W." and inserted in lieu thereof wherever they appeared the name "Fennie." Thereafter the instrument was delivered to Lacy and was so placed on the record. There was no re-execution by Stuart and his wife of the deed, and the alteration therein was made by Stuart, with the knowledge and acquiescence of Lacy and his wife.

Thereafter, in 1911, Lacy contracted with Yancey for the purchase of his two-thirds interest in this land at the price of two thousand dollars, and Yancey wrote, or had written, a deed conveying it to E. W. Lacy, but upon a conference between Yancey and Lacy and wife it was agreed to convey the two-thirds interest to Mrs. Fennie Lacy, which was done.

Lacy and his wife never had any children, and she, in 1916, died intestate leaving as her only heirs at law the appellees herein, and shortly thereafter the heirs at law filed this suit asking for a partition of the two tracts of land among them after setting apart to the surviving husband his dower interest therein.

The husband answered, admitting his wife's ownership of the fifteen acre tract of land, but asserting title in himself to the 137 acre tract, and alleging, in substance, that the conveyance to his wife of the two interests in that tract were made for the sole purpose of creating a lien against said land in her favor for the sum of five hundred

dollars which he had borrowed from her to make the cash payment on the Stuart interest, and that she held the land only to secure the payment of the same; that during her life he had repaid her the five hundred dollars but that she had delayed the making of conveyance thereof to him until her death and that said deeds should be construed, therefore, as a mortgage which should be cancelled, and the 137 acre tract adjudged to be his property. He further alleges that he had paid the whole purchase price for the said tract of land, and from the time of the purchase thereof had claimed, owned and occupied the same, and that his deceased wife had throughout that period recognized the same as belonging to him.

In a separate paragraph he asks that if the court, upon final consideration, should be of opinion that he is not entitled to a conveyance for the same, then that he be adjudged a lien thereon for three thousand dollars, the purchase money alleged to have been paid by him, and that the same be enforced.

The reply put the material allegations of the answer and counterclaim in issue, and in a separate paragraph it was pleaded in the alternative that if the defendant paid any part of the said purchase money he either gave the same to his wife or he caused the conveyance to be made to his wife secretly and fraudulently for the purpose of hindering and defrauding his creditors and for the purpose of preventing them from subjecting the same to the payment of his debts.

By a rejoinder and surrejoinder the issues were completed and upon final judgment the court adjudged the property to be that of the heirs at law, subject to Lacy's dower right, and he has appealed.

As to the Yancey conveyance the only direct evidence in the record that it was made to Mrs. Lacy, to be held by her in trust for him or as security for a debt and to be later reconveyed to him, is that of the appellant himself, and Yancey, and it is apparently conceded, as it must be, that this involves a transaction between Lacey and his deceased wife and his testimony is therefore not competent.

Yancey says that he first prepared the deed to E. W. Lacy and went to their home where he was informed that they wanted it to Fennie Lacy, and that E. W. Lacy said he had paid Fennie her money and he wanted this deed fixed just like the other so that later on she could make him a deed to the whole of it, and that in the same conver-

sation Mrs. Lacy said, in substance, the same thing; that is, "that later on she wanted to deed the whole thing to Lacy; that he had paid her her money and that she had put it on that house they were living in."

Giving to this language its broadest meaning and fullest import, nothing can be found in it which creates, or which may be fairly said to have had the purpose to create, any trust relation between her and her husband. Nor does it evidence any purpose to hold the same as security for a debt. At best it only was the expression of a purpose upon her part in the future to convey this land to her husband, and does not carry with it any legal or moral obligation resting upon her or that she thought at the time rested upon her.

The expression of an intention to do in the future some particular thing with one's property creates no obligation to do that thing. It has been many times written that the cancellation of an executed contract by a court of equity is the exercise of a most extraordinary power and that it should not be resorted to except in a clear case. It is likewise the invariable rule in this state and elsewhere that where the existence of an alleged trust must depend upon parol evidence, the chancellor will require clear, convincing and most satisfactory evidence, and particularly will the evidence be closely scrutinized after the death of one or more of the parties directly interested.

It may further be remarked that at the time of this Yancey transaction there was no relation of debtor and creditor between Mr. and Mrs. Lacy and therefore there then existed no reason consistent with the appellant's theory of this case why the title to that interest should have been taken to her to hold as security for a debt. The claim that the title was taken to her so that she might thereafter convey the whole tract to him at one time is not convincing; according to the appellant's theory he had at that time repaid her the money which she had advanced to pay on the Stuart interest, and if his claim as now asserted was correct, it would have been a much simpler way to have adjusted the whole matter by having the Yancey interest conveyed to him and taking her conveyance for the Stuart interest.

The evidence as a whole falls far short of establishing the trust asserted by the appellant. Nor is it satisfactory that he paid the whole consideration. There was no way to raise this money except from the proceeds of her property, which he managed and controlled for her.

The Stuart deed, however, was first executed and delivered to E. W. Lacy; he accepted the same; he paid the first payment and executed his notes for the others; thereafter that deed was so altered that the grantee therein was made to appear to be Fennie Lacy. Was E. W. Lacy by such alteration divested of title, although he himself was a party to the whole transaction? Under our law one may be divested of title to real estate only by his voluntary act done in the manner prescribed by law or by the judgment of a court of competent jurisdiction. In this case Stuart conveyed his one-third interest to E. W. Lacy, accepted from him the cash payment and his notes for the deferred payments, and thereafter, at the instance of both Lacy and Lacy's wife, altered the deed after it had been executed and delivered so as to make her appear to be the grantee. Under these circumstances the title still remains in him. Austin v. Moore, 188 Ky. 832; Rittenhouse v. Clark, 110 Ky. 147; Mize v. Day, 153 Ky. 739; Devlin on Deeds, Vol. 1, sec. 300; Tiedeman on Real Property, sec. 812.

It may be said, however, that in as much as Lacy was a party to this transaction and actually had the deed altered so as to make his wife appear to be the grantee therein, he would be estopped to deny that she was; but it is unnecessary to discuss this question in this case for the reason that there is no plea of estoppel and estoppel must be pleaded. Louisville Tobacco Warehouse Co. v. Lee, 172 Ky. 171; Brackett v. Modern Brotherhood of America, 154 Ky, 340.

It results therefore that the judgment of the lower court was erroneous in not adjudging E. W. Lacy to be the owner of the Stuart one-third, undivided interest; but in all other respects it was proper.

The judgment is reversed, with directions to enter a judgment in conformity with the views herein expressed.